[Civ. No. 1211. Fourth Appellate District.—October 17, 1933.]

FRANCES E. GRABAN, Respondent, v. JUAN GONZALES et al., Appellants.

Borton & Petrini for Appellants.

Osborn & Burum for Respondent.

MARKS, J.—This is an action for damages suffered by respondent in a motor vehicle accident on highway No. 99 in Kern County, near the Grapevine Creek bridge in the mountains between Lebec and the Grapevine station. The accident occurred on June 27, 1931, between 3 and 4 o'clock in the afternoon. The day was dry and clear. Respondent recovered judgment, from which this appeal is taken.

In the oral argument before this court, counsel for appellants expressly waived reliance upon any of their specifications of error except the failure of the trial court to give one of their requested instructions. This instruction concerned the law governing their liability if the accident and injury to respondent was caused solely by a latent defect in devices and appliances attached to a motor vehicle which had been purchased from reputable manufacturers, and which latent defect could not be discovered by the ordinary inspections usually made. From the view we take of the case we may assume that the proposed instruction properly stated the law and should have been given by the trial judge, and still we conclude that under the evidence before us the refusal to give it was not prejudicial error requiring a reversal of the judgment. We are satisfied that the record discloses such carelessness and negligence on the part of Angel Bracamonte, the driver of the truck, entirely independent of any latent defect, if any, in the machinery under his control, so that the failure to give the instruction had little if any bearing upon the verdict returned.

The truck was owned by Juan Gonzales and was being operated by Bracamonte, his employee, who was acting in the scope of his employment and upon the business of his employer. The truck was a three-ton GMC, about eight and one-half months old, and up to the occasion in question had given no trouble in its operation. Its brakes were in good

repair. In addition to the standard transmission which had four speeds ahead there was installed a compound transmission which gave additional speeds ahead, and in descending a grade, additional braking power through the compression of the engine. The compound transmission was operated by a lever separate from the regular gear shift lever. The compound transmission lever descended through the floor boards of the truck and was attached to two arms in the form of an inverted "Y", which operated the gears through connecting rods. These arms were grooved to receive the lower end of the lever and were attached to it by a bolt which was secured by a lock nut.

Bracamonte was making the trip northerly from Los Angeles to Bakersfield with a load of about one ton on the truck. After descending the grade north of Lebec for some distance he shifted his standard transmission from fourth speed to third speed and attempted to shift his compound transmission from direct drive to a gear in order to get added engine compression to brake his truck in descending the grades ahead of him. The exact speed at which he was traveling at that time is not clear from his testimony. He either reduced his speed eight miles an hour to twenty-two miles an hour, or eight miles an hour from a speed of twenty-two miles an hour. It was necessary to have the revolutions of the engine correspond to the revolutions of the gears in order to engage the gears of the compound transmission. He was unsuccessful in his efforts to engage the gears of this transmission and found his truck proceeding forward in neutral. He allowed it to coast for about 600 feet, and after a motor officer whom he passed had told him to get his truck in gear, he again attempted to shift while the truck was traveling at a speed of thirty or more miles per hour. He was unsuccessful in his second attempt and continued to coast down the grade around what is known as "Dead Man's Curve" until his truck reached a speed of fifty or more miles an hour. He then made a third and last unsuccessful attempt to engage his gears. The truck rapidly gained speed in proceeding down the grade for about two miles and when at a speed of between seventy and eighty-five miles an hour it crashed into an automobile in which respondent was riding.

There is evidence in the record which would indicate that the lock nut which attached the compound transmission gear shift lever to the "Y" arms under the floor boards had become loose and that there was some wear showing. Appellants maintain that these two conditions created a latent defect which prevented Bracamonte from engaging his gears and proceeding down the grade safely under the resistance from the compression of the engine.

Section 139 of the California Vehicle Act in effect at the time of the accident provided in part that a driver of a motor vehicle on a mountain highway should not permit his vehicle to coast. Of course, a violation of a statutory enactment by a driver is negligence *per se*.

Appellants produced as witnesses a number of truck drivers familiar with the part of the highway in question here who all testified that it was unsafe to permit a truck to proceed down the grade north of Lebec without having its gears engaged. They all agreed that a truck driver should shift from direct drive to the gears of his truck at about the place where Bracamonte first attempted to make the shift and go into lower gears as the grade became steeper northerly from that point. One of these witnesses testified that four-wheel brakes, such as were part of the equipment of the truck in question, would burn out within 150 feet if used solely to control the truck without the use of the braking power of the engine. Bracamonte testified that he always shifted his gears at about the place where he first tried to change them on the day of the accident and that it was dangerous to proceed northerly with the truck either in direct drive or neutral. The brakes on the truck were in good condition at the point where Bracamonte attempted to make his first shift. It is clear from his testimony that had he desired to stop at that time, by using his brakes he could have done so.

Under the facts which we have briefly outlined we have reached the conclusion that the proximate cause of the accident was Bracamonte's failure to stop his truck when he found that something was wrong with his compound transmission and that the truck was coasting in neutral. It was his negligence in proceeding, contrary to law, with his truck out of gear, coasting down a mountain grade, upon which the right of recovery of the respondent should be predicated, and not upon any possible or supposed latent defect in the compound

transmission which might have prevented Bracamonte from engaging the gears. According to his own testimony it was dangerous to coast down the grade ahead of him with his truck in neutral. He took the chance of being able to shift his gears at some point ahead rather than to stop his truck with his brakes while he could. He should have stopped and either himself made repairs in the compound transmission so that the gears would engage, or, if he could not have done this, he should have delayed his journey until the necessary repairs could have been made by others so that he could have proceeded safely and without endangering the lives of those ahead of him.

Under these circumstances there is ample evidence in the record to sustain the verdict and judgment independent of any question of a latent defect in the compound transmission of the truck, if any existed.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 16, 1933.